JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Alex Chandler appeals from his convictions for felonious assault with a peace officer specification and failure to comply with an order or signal of a police officer. He assigns seven errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm Chandler's convictions. The apposite facts follow.
 {¶ 3} Chandler was indicted by the grand jury in a two-count indictment. One count was for felonious assault with a peace officer specification, and the other count was for failure to comply with an order or signal of a police officer. These counts arose out of Chandler's attack on Detective Michael Raspberry, a Cleveland police detective, and leading the police on a high speed chase.
 {¶ 4} Chandler waived his right to a jury trial and the matter proceeded to a bench trial, at which the following evidence was presented.
 {¶ 5} On July 27, 2001, the Drug Enforcement Agency was working with the Fourth District Cleveland Police Vice Unit to execute an arrest of Chandler for trafficking in narcotics. The agents and detectives were briefed beforehand and were shown a photograph of Chandler, who was known to drive a 1988 Mercury Crown Victoria. The detectives were also informed Chandler was known to carry a weapon and large amounts of drugs.
 {¶ 6} Complying with Drug Enforcement Agents' orders, Cleveland detectives gathered at East 161st and Throckley at approximately 3:30 p.m. to apprehend Chandler. The detectives were in unmarked vehicles.
 {¶ 7} According to Detectives Roddy and Raspberry, Chandler arrived as expected driving the described vehicle. He was surrounded by the officers at East 161st and Throckley, with the detectives displaying their badges on a chain around their necks, and they were shouting "Cleveland Police, Cleveland Police." The officers had their weapons drawn due to the knowledge Chandler usually carried a weapon. According to Detective Roddy, although he did not think the car in front of Chandler had its blue light on, the car behind him did. Chandler was surrounded in his vehicle and boxed in by the detectives.
 {¶ 8} Detective Raspberry then walked to the driver's side of Chandler's vehicle. He noticed Chandler was looking around as if searching for a way to get away. Chandler then put his car in reverse. Detective Raspberry reached into the vehicle to attempt to turn the vehicle's ignition off. As he did so, Chandler drove the car forward towards the other officers, knocking Detective Raspberry to the ground and sped away.
 {¶ 9} Detectives Raspberry and Roddy ran to their cars and pursued Chandler at speeds exceeding sixty miles per hour through residential neighborhoods, consisting of pedestrians walking across streets and children playing. During the chase, Chandler ran through a stop sign. He eventually crashed his vehicle into another car as it entered the intersection of Van Aken and Ashby. Chandler then attempted to escape on foot. Detective Raspberry apprehended Chandler after giving chase.
 {¶ 10} A subsequent search of Chandler's vehicle revealed a bottle containing PCP. The detectives had no knowledge whether Chandler was subsequently charged for possessing the PCP.
 {¶ 11} After the state rested and Chandler's Crim.R. 29 motion was denied, Chandler testified in his own defense. He testified he was not aware that the men pointing their guns at him were police officers. He said they never identified themselves and were not wearing badges. He therefore thought he was being robbed. According to Chandler, the detectives also did not have their lights activated on top of their cars and he did not hear sirens. Chandler also claimed that he traveled at a high rate of speed because his car's accelerator pedal was stuck and he could not get the key out of the ignition to stop the car. He claimed he continued to run after he crashed his car because he was afraid it was going to explode because he smelled gas.
 {¶ 12} Aaron Hall, a friend of Chandler's, also testified in his behalf. Hall stated he initially did not realize the men were officers. It was not until Chandler drove off that he saw the officers' badges hanging from their belt buckles, and one officer wearing a baseball cap backwards with the words "Cleveland Police" written on it. Like Chandler, he too thought they were being robbed.
 {¶ 13} Based on the above evidence, the trial court found Chandler guilty of both counts as charged. Chandler was sentenced to four years for the felonious assault and one year for failure to comply with an order of a police officer, to be served consecutively.
 {¶ 14} In his first assigned error, Chandler argues the trial court erred by questioning him about the details of his prior convictions.
 {¶ 15} Pursuant to Evid.R. 609(A)(2), evidence that the accused has been convicted of a prior crime is "admissible if the crime was punishable by *** imprisonment in excess of one year *** and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice of confusion of the issues, or of misleading the jury."
 {¶ 16} Evid. R. 609 makes no specific mention of what details of a prior conviction may be elicited, but generally, the prosecutor is limited to ascertaining the fact of conviction and the name of the offense.[2]
In the instant case, the trial court asked Chandler what his prior convictions consisted of, but then continued to ask the specific details regarding his felonious assault charge.
 {¶ 17} Although the trial court should not have gone into the details of the prior conviction, we cannot say this questioning constitutes reversible error. This was not a jury trial, but a bench trial. The law presumes that in a bench trial the court considers only relevant, material, and competent evidence.[3] Therefore, based on this presumption, we cannot conclude this line of questioning resulted in reversible error.
 {¶ 18} Chandler's first assigned error is overruled.
 {¶ 19} In his second assigned error, Chandler argues he was denied due process when the trial court granted the state's motion for a continuance of the trial over his objection. The state orally motioned to continue the trial because Detective Raspberry was unable to appear to testify on the date trial was originally to commence.
 {¶ 20} "The grant or denial of a continuance is a matter [that] is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial or granting of a continuance unless there has been an abuse of discretion."[4] In evaluating a motion for a continuance, a trial court should consider the length of the delay requested; the inconvenience to the litigants, witnesses, opposing counsel, and the court; and whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived.[5]
 {¶ 21} In the instant case, the delay was requested because the victim of the felonious assault, Detective Raspberry, was unavailable to testify because his wife was undergoing surgery. The trial was therefore continued from April 9th to April 16th. Therefore, the continuance was not lengthy. Although defense counsel argued it was an inconvenience to defense witnesses to have to take time off from work to testify, the court balanced this inconvenience with Detective Rasberry's inability to appear and found the continuance should be granted.
 {¶ 22} Because the trial was only continued for a week, the court gave consideration to the inconvenience and hardship to the defense, and the reason for the request for the continuance was legitimate and not for a dilatory purpose, we conclude the trial court did not abuse its discretion in granting the continuance.
 {¶ 23} Chandler's second assigned error is overruled.
 {¶ 24} In his third assigned error, Chandler argues his conviction for felonious assault was against the manifest weight of the evidence because the detective's own actions were to blame for his assault.
 {¶ 25} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As this court has stated:
 {¶ 26} "The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact. State v.Thomas (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. If there was sufficient evidence for the triers of fact to find defendant guilty beyond a reasonable doubt, this court will not reverse a guilty verdict based on manifest weight of the evidence. State v. Brown (1988),38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177,103 L.Ed.2d 239."[6]
 {¶ 27} The evidence at trial indicated that Detective Rasberry inserted his arm through Chandler's open car window in an attempt to remove the keys from the ignition to prevent him from fleeing the scene. Evidence was presented that the detectives were wearing badges, and also identified themselves as officers by loudly yelling, "Cleveland Police" repeatedly. Under these circumstances, Chandler, purposely moving his car while Detective Rasberry's arm was in the window, constituted felonious assault.
 {¶ 28} Although Chandler and his friend testified they were unaware the men were officers and they thought they were being robbed, the credibility of the witnesses is for the trier of facts to discern.
 {¶ 29} We conclude Chandler's conviction for felonious assault was not against the manifest weight of the evidence.
 {¶ 30} Chandler's third assigned error is overruled.
 {¶ 31} In his fourth assigned error, Chandler argues the officer's seizure of his person and the subsequent search violated his Fourth Amendment rights.
 {¶ 32} A review of the record indicates Chandler never motioned to suppress this evidence. By failing to file a motion to suppress illegally obtained evidence, a defendant waives any objection to its admission.[7]
 {¶ 33} Accordingly, Chandler's fourth assigned error is overruled.
 {¶ 34} Chandler goes on to argue, however, in his seventh assigned error, that he was deprived of the effective assistance of counsel because of his counsel's failure to file the motion to suppress.
 {¶ 35} With respect to an ineffective assistance of counsel claim, trial counsel will not be deemed ineffective "unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance."[8] To demonstrate prejudice, appellant must show that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."[9]
 {¶ 36} The Sixth Amendment's guarantee of assistance of counsel does not require trial counsel to file a motion to suppress in every case.[10] The burden is on the defendant to point to evidence in the record supporting suppression of evidence. "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion."[11]
 {¶ 37} We recognize that a failure to file a motion to suppress may constitute ineffective assistance of counsel where there is a solid possibility that the court would have suppressed the evidence.[12]
However, even when some evidence in the record supports a motion to suppress, we presume that defense counsel was effective if "the defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act."[13]
 {¶ 38} In the instant case, we conclude no prejudice resulted from counsel's failure to file a motion. Both parties agree that no evidence was seized that was subject to the instant charges. Although the detectives claimed a bottle of PCP was found, Chandler was not arrested at that time for drug possession, but solely for his assault on Detective Rasberry and the ensuing chase. Therefore, the issue in the case is whether Chandler assaulted the officers. Chandler never denies the assault. He claims he was justified in his actions based on his belief he was being robbed. The trial court found the officers more believable than Chandler. There is nothing in this case to exclude.
 {¶ 39} Even assuming Chandler's Fourth Amendment Rights were violated, the assault on the officer constituted a new crime. Under Statev. Barnes,[14] evidence of a new crime committed subsequent to an illegal arrest or search, is admissible.
 {¶ 40} Accordingly, Chandler's seventh assigned error is overruled.
 {¶ 41} In his fifth and sixth assigned errors, Chandler argues his conviction for failure to comply with the order or signal of a police officer was against the manifest weight of the evidence and not supported by sufficient evidence. Chandler argues he fled the scene because he was unaware the people surrounding him were officers and he thought he was being robbed.
 {¶ 42} We discussed our standard of review under a manifest weight of the evidence argument above. On review for legal sufficiency, the appellate court's function is to examine evidence admitted at trial and determine whether such evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.[15] In making its determination, an appellate court must view the evidence in a light most favorable to the prosecution.[16]
 {¶ 43} In the instant case, although Chandler and Hall testified the officers never identified themselves and the undercover cars did not have lights on them, the detectives testified to the contrary. The detectives testified they identified themselves by yelling loudly, "Cleveland Police" several times. They also stated they wore their badges around their necks and that although the car in front of Chandler's did not have its lights on, the car in back of him did. Furthermore, the detectives stated during the chase their sirens were on as well as lights.
 {¶ 44} Based on this evidence, when construed in favor of the prosecution, there was sufficient evidence in support of Chandler's conviction for failure to obey a signal or order by an officer. The credibility of the witnesses was for the trier of facts to discern, therefore, we cannot find the conviction was against the manifest weight of the evidence.
 {¶ 45} Chandler's fifth and sixth assigned errors are overruled.
Judgment affirmed.
Ann Dyke and Frank D. Celebrezze, Jr., JJ., concur.
 APPENDIX
ASSIGNMENTS OF ERROR
 {¶ 46} "I. Defendant was denied due process and a fair trial when the court and the prosecutor elicited details of defendant's prior convictions."
 {¶ 47} "II. Defendant was denied due process of law when the case was continued over defense objection."
 {¶ 48} "III. Defendant was denied due process of law when he was convicted of felonious assault."
 {¶ 49} "IV. Defendant was denied due process of law when he was convicted of offenses which were the result of police actions in violation of his rights under the Fourth Amendment and Article I, Section 14 of the Ohio Constitution."
 {¶ 50} "V. Defendant was denied due process of law when he was convicted of failure to comply with an order or signal of a police officer."
 {¶ 51} "VI. Defendant was denied due process of law when the court overruled his motion for judgment of acquittal."
 {¶ 52} "VII. Defendant was denied effective assistance of counsel."
[1] See Appendix.
[2] State v. Fricke (1984), 13 Ohio App.3d 331.
[3] State v. Post (1987), 32 Ohio St.3d 380, 384.
[4] State v. Unger (1981), 67 Ohio St.2d 65, 67.
[5] Id. at 67-68.
[6] State v. Rios (1991), 75 Ohio App.3d 288, 291. See, also, State v.Jenks (1991), 61 Ohio St.3d 259, 273.
[7] State v. Wade (1978), 53 Ohio St.2d 182, paragraph three of the syllabus, vacated on other grounds (1978), 438 U.S. 911; State v. F.O.E.Aerie 2295 (1988), 38 Ohio St.3d 53, paragraph two of the syllabus.
[8] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, citing State v. Lytle (1976), 48 Ohio St.2d 391, and Stricklandv. Washington (1984), 466 U.S. 668.
[9] Bradley, supra, paragraph three of the syllabus.
[10] State v. Flors (1987), 38 Ohio App.3d 133, citing Kimmelman v.Morrison (1986), 477 U.S. 365.
[11] State v. Gibson (1980), 69 Ohio App.2d 91, 95.
[12] State v. Garrett (1991), 76 Ohio App.3d 57.
[13] State v. Edwards (July 11, 1996), Cuyahoga App. No. 69077, citingState v. Martin (1983), 20 Ohio App.3d 172. See, also, Strickland, supra, at 689.
[14] (Dec. 5, 1997), 2nd Dist. No. 16434.
[15] Id.; State v. Fryer (1993), 90 Ohio App.3d 37.
[16] Id. at 43.