JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Caliel Carey appeals his conviction for two counts of aggravated robbery with firearm specifications and the accompanying sentence.
Carey's counsel assigns four errors for our review. In addition, Carey assigns two additional pro se assigned errors.[1] *Page 2 
 {¶ 2} Having reviewed the record and pertinent law, we affirm Carey's conviction. The apposite facts follow.
 Jury Trial {¶ 3} Carey committed two separate aggravated robberies with firearms on two different victims. On April 4, 2005, at approximately 1:30 a.m., Carey robbed Sam Wingo, an admitted drug dealer. Wingo knew Carey because he was friends with Carey's younger brother. He knew Carey by his nickname, "Boo."
 {¶ 4} On the date in question, Carey followed Wingo in his car. He flashed his high beam lights at Wingo. Wingo recognized Carey's car and pulled over in front of the Caine Bar located at East 131st and Caine Avenue. Wingo described the area as well lit. Carey asked Wingo for change for a twenty dollar bill. Wingo looked down to get the money, and when he looked up Carey was pointing a gun at him. Carey ordered Wingo out of the car and took Carey's car keys, rings, necklace, bracelet, watch, and his wallet containing $800 in cash.
 {¶ 5} After the robbery, Wingo learned Boo's real name was Caliel Carey. After attempting to exact revenge on his own, he reported the incident to the police several days later. Wingo gave them Carey's name and described his car as a 2004 Chrysler 300M. The police showed Wingo a photo array from which he identified Carey. *Page 3 
 {¶ 6} On April 19, 2005, Carey robbed the second victim. On that date, Anthony Perry received a call from his employee, James Ester. Ester told Perry that he needed a ride because of car problems. When Perry arrived, Ester was accompanied by Carey. Carey grabbed Perry, spun him around, and stuck a gun to his back. He ordered Perry to remove his jewelry and searched his pockets. He took Perry's car keys, rings, watch, bracelet, diamond cross necklace, and his wallet containing a couple hundred dollars.
 {¶ 7} Perry reported the incident to police. He described Carey as a 40 year-old African-American male with close cropped hair, 57" tall, and about 210 pounds. Approximately one week later he was shown a photo array from which he identified Carey and Ester.
 {¶ 8} Darryl Hensley and Larry Macon, Jr. testified as character witnesses on Carey's behalf. They both testified about Carey's good character and that he was non-violent, truthful, fair, and honest.
 {¶ 9} In addition, Willie Hudson testified that he witnessed the robbery of Perry and that Carey was not the robber. Hudson denied assisting the police with apprehending Carey. However, Detective Habeeb testified on rebuttal that Hudson provided the police with information which aided them in locating Carey. *Page 4 
 {¶ 10} The jury found Carey guilty of two counts of aggravated robbery, each with one and three-year firearm specifications. The trial court sentenced him to a total of twelve years.
 Wife's Testimony {¶ 11} In his first assigned error, Carey argues he was deprived of his right to compulsory process when the trial court refused to allow Carey's wife to testify on his behalf. We disagree.
 {¶ 12} The trial court did not permit Carey's wife to testify because her name was not provided to the state during discovery, and because she was present in the courtroom when the other witnesses testified.
 {¶ 13} "Crim.R. 16 allows a court to prohibit the introduction into evidence of the testimony of a witness who had not been disclosed to the other side prior to the time of trial where there is a continuing order for discovery."[2] Thus, whether to permit the undisclosed witness to testify is within the sound discretion of the trial court.[3]
 {¶ 14} In the instant case, there was clearly a possibility of prejudice to the state created by the wife's presence in the courtroom during the presentation of the state's case. Thus, we cannot conclude the trial court acted without sufficient *Page 5 
reason or that its action was either arbitrary or unconscionable.[4]
Accordingly, Carey's first assigned error is overruled.
 Suggestive Identification Procedure {¶ 15} In his second assigned error, Carey argues the victims should not have been permitted to testify to their photo array identification of Carey because the photo array was not produced at trial. We disagree.
 {¶ 16} Perry and Wingo testified that they were shown a photo array of approximately seven photographs from which they identified Carey. Detective John Kraynik also testified to the fact that the victims were shown a collection of photographs from which Carey was positively identified. The photo array was not presented at trial because the prosecutor was unable to locate the photographs used. However, the fact that the photo array was not produced did not taint the victim's identification of Carey. Even assuming the photo array was somehow impermissibly suggestive, the court must determine if the eyewitness identification was otherwise reliable.[5] The existence of notable flaws in the identification *Page 6 
procedure does not, per se, preclude the admissibility of the identification testimony as long as the challenged identification itself is reliable.[6]
 {¶ 17} Relevant factors in assessing the reliability of eyewitness identification testimony include the witness' opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.[7]
 {¶ 18} In the instant case, Wingo had known Carey for a long time from the neighborhood. In fact, Wingo was good friends with Carey's younger brother. Wingo provided Carey's name to police when he reported the crime, along with a description of Carey's car. The police verified that Carey owned a car of the make and model described by Wingo. These factors indicate the identification itself was reliable.
 {¶ 19} Perry did not know Carey, but he was able to get a good look at him when he was robbed. According to Perry, the area where he was robbed was well lit. He stated that he looked face-to-face with Carey for several minutes as he attempted to comply with Carey's order to remove his necklace. He also viewed the photo array approximately one week after the robbery, which is a short period of *Page 7 
time. He described the robber as a 40-year old African-American male with glasses, 57" tall, 210 pounds, and bald or close-cropped hair. This comports with Carey's physical description. He also positively identified Carey in court. Thus, even if the photo array was found to be suggestive, these surrounding factors indicate Perry's identification of Carey was reliable. Accordingly, Carey's second assigned error is overruled.
 Jury Allowed to View Exhibit Previously Excluded {¶ 20} In his third assigned error, Carey argues the trial court erred by allowing the jury to view an exhibit the court had previously excluded. The trial court had previously excluded the exhibit because the state failed to provide the exhibit to Carey prior to trial.
 {¶ 21} When the jury asks to see an exhibit, it is within the trial court's discretion to grant or deny that request.[8] In the instant case, the trial court initially excluded the exhibit containing a copy of Carey's driver's license. However, the jury during deliberations requested to see the exhibit, which had been shown to them during the trial. The trial court originally excluded the exhibit because there was a disagreement regarding whether the state had given defense counsel the exhibit prior to trial. However, when the jury requested the exhibit, the trial court found no *Page 8 
prejudice in allowing it to be given to the jury because it had been referred to and shown to the jury several times without objection during the trial.
 {¶ 22} Under these circumstances, we conclude the trial court did not abuse its discretion by permitting the jury to view the exhibit. As the trial court stated, because the jury was shown the exhibit throughout the trial, no prejudice resulted. Accordingly, Carey's third assigned error is overruled.
 Ineffective Assistance of Counsel {¶ 23} In his fourth assigned error, Carey argues his counsel was ineffective for failing to file a motion to suppress the victims' photo array identification of Carey because the array was not produced at trial. We disagree.
 {¶ 24} Trial counsel will not be deemed ineffective "unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance."[9] To demonstrate prejudice, appellant must show that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."[10] *Page 9 
 {¶ 25} The Sixth Amendment's guarantee of assistance of counsel does not require trial counsel to file a motion to suppress in every case.[11] A criminal defendant asserting a claim of ineffective assistance on this basis must show that the failure to file the motion to suppress caused him prejudice.[12] Thus, the burden is on the appellant to point to evidence in the record supporting the suppression of evidence.
 {¶ 26} We recognize that a failure to file a motion to suppress may constitute ineffective assistance of counsel where there is a solid possibility that the court would have suppressed the evidence.[13]
However, even when some evidence in the record supports a motion to suppress, we presume that defense counsel was effective if "the defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act."[14]
 {¶ 27} We concluded in the second assigned error that the state's failure to produce the photo array was not prejudicial given the surrounding circumstances indicated the victims' identification was reliable. Therefore, because the motion to *Page 10 
suppress would not have impacted the result of the trial, counsel was not ineffective for failing to seek to suppress the identification testimony. Accordingly, Carey's fourth assigned error is overruled.
 Consecutive Sentence {¶ 28} In his fifth assigned pro se error, Carey contends the trial court erred by sentencing him to consecutive sentences in contravention of the Ohio Supreme Court's decision in State v. Foster.[15] Carey does not argue the trial court made findings in imposing the consecutive sentence, but contends it erred by imposing consecutive sentences. Carey was sentenced post-Foster.
 {¶ 29} In Foster, the Ohio Supreme Court held that judicial fact-finding to impose the maximum or a consecutive sentence is unconstitutional in light of Blakely v. Washington[16] The Court also held that "after the severance, judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C.2929.14(A) based upon a jury verdict or admission of the defendant."[17] As a result, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings and give reasons for imposing *Page 11 
maximum, consecutive or more than the minimum sentence."[18]Foster does not prohibit the imposition of consecutive sentences. Thus, we find no error in the trial court's imposition of the consecutive sentences. Accordingly, Carey's fifth assigned error is overruled.
 Firearm Specifications {¶ 30} In his sixth assigned pro se error, Carey contends the trial court erred by sentencing him to more than one year on each of his firearm specifications. Carey contends one year was the maximum term authorized under the statute. We disagree.
 {¶ 31} Carey was indicted for both one and three-year firearm specifications regarding his aggravated robbery counts. The jury found Carey guilty of both firearm specifications. At sentencing, the trial court merged the one-year specifications with the three-year specifications, so a three-year specification was imposed for each aggravated robbery count. Because Carey was found guilty of the three-year firearm specifications, the trial court did not err in sentencing Carey to three years on these specifications. Accordingly, Carey's sixth assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed. *Page 12 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 APPENDIX
Assignments of Error "I. The appellant was denied his right to present a complete defense in violation of his Sixth Amendment right under the United States Constitution."
 "II. The trial court erred when it allowed testimony of an out of court identification by both witnesses when the identification procedure was unnecessarily and impermissively suggestive."
 "III. The trial court abused its discretion by reversing his prior decision to exclude evidence based upon the state's discovery violation and then after request by the jury, allowing the exhibit to go back with the jury for deliberation."
 "IV. The appellant was denied effective assistance of counsel by counsel's failure to file a motion to suppress the out of court *Page 13 
identification and subsequent in court identification when the identification procedure was unnecessarily and impermissively suggestive."
Pro se supplemental assigned errors "V. The trial court erred in sentencing the appellant to consecutive sentence in violation of both his Fourteenth Amendment Right under the United States Constitution and Article I Section 16 of the Ohio Constitution of due process and due process clauses. Re: State v. Foster, _ Ohio St.3d___, 2006-Ohio-856."
 "VI. The trial court erred in sentencing the appellant to a three (3) year prison term for a firearm specification pursuant to R.C. 2941.141
when the maximum sentence only carried a prison term of one year. The error by the trial court violated both of appellant's Fourteenth Amendment Right under the United States Constitution of due course and due process clause."
[1] See Appendix.
[2] State v. Norman (1983), 7 Ohio App.3d 17.
[3] State v. Edwards (1976), 49 Ohio St.2d 31,42; State v. White (Jan. 4, 1991), 3rd Dist. No. 1-89-30.
[4] State v. Adams (1980) 62 Ohio St.2d 151.
[5] Cf. State v. Halley, 93 Ohio App.3d 71, 76 (photo array not presented, but identification testimony admissible when identification was otherwise reliable.)
[6] State v. Merrill (1984), 22 Ohio App.3d 119, 121.
[7] Id. at 121-122.
[8] See State v. Bethel, 110 Ohio St.3d 416, 2006-Ohio-4853; State v.McGuire, 80 Ohio St.3d 390, 396, 1997-Ohio-335; State v. Clark (1988),38 Ohio St.3d 252, 257.
[9] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, citing State v. Lytle (1976), 48 Ohio St.2d 391, andStrickland v. Washington (1984), 466 U.S. 668.
[10] Bradley, supra, paragraph three of the syllabus.
[11] State v. Pimental, Cuyahoga App. No. 84034, 2005-Ohio-384, citingKimmelman v. Morrison (1986), 477 U.S. 365, 384, 91 L.Ed.2d 305, 106 S.Ct. 2574; State v. Nields, 93 Ohio St.3d 6, 34, 2001-Ohio-1291;State v. Flors (1987), 38 Ohio App.3d 133.
[12] State v. Robinson (1996), 108 Ohio App.3d 428.
[13] State v. Garrett (1991), 76 Ohio App.3d 57.
[14] State v. Chandler, Cuyahoga App. No. 81817, 2003-Ohio-6037;State v. Edwards (July 11, 1996), Cuyahoga App. No. 69077, citingState v. Martin (1983), 20 Ohio App.3d 172. See, also,Strickland, supra, at 689.
[15] 109 Ohio St.3d 7, 2006-Ohio-856.
[16] (2004), 542 U.S. 296.
[17] Foster, supra at ]}99.
[18] Id. at paragraph seven of the syllabus, and State v. Mathis,109 Ohio St.3d 54, 2006-Ohio-855, paragraph three of the syllabus. *Page 1