OPINION *Page 2 
{¶ 1} Appellant was convicted and sentenced for one count of aggravated robbery with a firearm specification and one count of having a weapon under disability. It is from this conviction and sentence that appellant now seeks to appeal.
 STATEMENT OF FACTS AND LAW {¶ 2} On March 10, 2006, appellant was indicted by the Licking County Grand Jury for one count of aggravated robbery in violation of R.C.2911.01, a first degree felony, with a firearm specification in violation of R.C. 2929.14(D) and R.C. 2914.145, and one count of having a weapon under disability in violation of R.C. 2921.13, a third degree felony. On March 20, 2006, appellant appeared for his arraignment and pled not guilty.
 {¶ 3} Prior to trial, Appellant made an oral motion to exclude the testimony of three State's witnesses, William Yost, Max Larijani and Erik McCort. Appellant argued that there had been insufficient pre-trial notice of the State's intent to call the witnesses. The trial court denied the motion finding that the State had made adequate disclosure, there was no prejudice to appellant and appellant had not requested a continuance of the trial.
 {¶ 4} On March 31, 2006, the matter proceeded to trial. During the trial the State called several witnesses including but not limited to, Regina Phipps an employee of Duke and Duchess gas station and convenience stores, Officer Michael Boals, Officer Steven Garavuso, William Yost, William Kidwell, Juanita Kidwell, Probation Officer-David Almos, Erik McCort, and BCI criminalist Max Larijani. *Page 3 
 {¶ 5} Ms. Phipps testified that on September 6, 2005, she was working at the Duke and Duchess convenience store putting away cigarettes. Ms. Phipps testified that a man, standing by the cash register, asked for a pack of Kool Cigarettes. She turned to reach for the cigarettes and when she turned back to hand him the pack she saw that he was holding a revolver. The man instructed her to place money in a plastic Kroger's grocery bag. Ms. Phipps did exactly what he told her to do. The man then left the store and got into a van. Ms. Phipps testified that she was able to see the license plate number on the van. She then hit the store alarm, called 911 and gave the dispatcher the license plate number of the van. A couple days after the incident she recalled that the man was wearing a dark Addidas shirt with white lettering and a ball cap. She further testified that she observed the man as being a white male in his twenties wearing silver rimmed glasses.
 {¶ 6} Officer Boals, a lieutenant at the Pataskala Police Department, testified that the license plate number of the van was traced to William and Juanita Kidwell. Officer Boals stated that upon speaking with Mr. Kidwell, he learned that the Kidwells had purchased the vehicle for appellant. Mr. Kidwell provided the officer with the appellant's address and informed the officer that a revolver had been taken from his gun collection.
 {¶ 7} Officer Boals testified that appellant was under probation supervision and appellant's probation officer, David Almos, was contacted. Mr. Almos testified that at the time of the offense appellant was being supervised pursuant to the trial court's order in Licking County Common Pleas Court, Criminal Division, Case Number 04CR488, filed *Page 4 
February 3, 2005. Specifically, appellant was placed on intervention in lieu of conviction for the charge of possession of crack cocaine, a fifth degree felony.
 {¶ 8} Officer Boals testified that upon arriving at appellant's address, they observed a van fitting the description given by Ms. Phipps. He stated that the officers conducted a surveillance of the parking lot and observed appellant open the passenger side door. The officer testified that appellant was approached for identification purposes. In the process of determining appellant's identification, appellant gave consent for a search of his apartment. Officer Boals also testified that arrangements were made to impound appellant's vehicle. Simultaneously, appellant's probation officer observed a firearm between the driver and passenger seats. Officer Boals testified that the firearm was in plain view, was photographed and seized.
 {¶ 9} During the consent search of appellant's apartment, officer Boals testified that the evidence seized included a cellular phone, a plastic Kroger grocery bag and Kool Filter King cigarettes. Officer Boals also testified that after impound, a search warrant of appellant's vehicle was executed. During the search of the vehicle, the officers seized an empty plastic Kroger's bag, empty packages of Kool Filter King cigarettes, a brown Addidas shirt with white lettering and a dark blue ball cap. The officer testified that the Addidas shirt and ball cap were sent to the Bureau of Criminal Intelligence (BCI) for DNA comparisons.
 {¶ 10} Officer Steven Garavuso of the Pataskala Police Department testified that the firearm which was collected from appellant's vehicle was a model R.G. 31, .38 caliber revolver. He stated that pursuant to ballistic testing the firearm was determined to be operable. Additionally, during their testimony, Mr. Kidwell identified the firearm as *Page 5 
the revolver missing from his collection and Ms. Phipps stated that the revolver resembled the gun used in the offense.
 {¶ 11} Max Larijani, a forensic scientist from BCI testified regarding the DNA comparisons. Mr. Larijani testified that the brown Addidas shirt and blue ball cap contained a mixture of DNA. He testified that the results included appellant as a donor of the DNA on the Addidas shirt and the blue ball cap.
 {¶ 12} Ms. Juanita Kidwel, appellant's aunt, testified that appellant contacted her from the jail subsequent to his arrest. She testified that during the telephone call appellant said, "It was a mistake, I was kind of in a bad position and made a desperate move." A tape of the conversation was authenticated by Erik McCort and was played for the jury during Ms. Kidwell's testimony.
 {¶ 13} Finally, William Yost, a warehouse manager for Gummer Wholesale, testified that his employer supplies cigarettes to convenience stores. He testified that Gummer Wholesaler is the exclusive supplier of Kool cigarettes to Duke and Duchess convenience stores. He testified that the tax stamp on the cigarettes seized from the appellant was placed, by his company, on the cigarette pack, on August 15, 2005.
 {¶ 14} On September 1, 2006, the jury found appellant guilty as charged in the indictment. Sentencing was deferred pending a pre-sentence investigation. On September 25, 2006, appellant was sentenced to six years of incarceration for aggravated robbery, two years of incarceration for having a weapon under disability and a mandatory three years of incarceration for the firearm specification. The trial court further ordered appellant to serve the sentences for aggravated robbery and having a weapon under disability concurrently to each other, but consecutively to the firearm *Page 6 
specification. It is from this conviction and sentence that appellant now seeks to appeal setting forth the following assignment of errors:
 {¶ 15} "I. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 16} "II. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 17} In the first assignment of error appellant argues that trial counsel was ineffective for failure to file a motion to suppress the firearm and for failure to request a continuance in order to further investigate the testimony of several state witnesses.
 {¶ 18} A properly licensed attorney is presumed competent. State v.Hamblin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476. Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's performance fell below an objective standard of reasonable representation and that were it not for counsel's error, the result of the proceedings would have been different. In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 19} Reviewing courts must not use hindsight to second-guess trial strategy, and must bear in mind that different trial counsel will often defend the same case in different manners. Strickland, supra at 689;State v. Keenan, 81 Ohio St.3d 133, 152, 1998-Ohio-459, 689 N.E.2d 929. Ineffective assistance of counsel claims may not be based upon debatable strategic and tactical decisions. State v. Phillips, 74 Ohio St.3d 72,85, 1995-Ohio-171, 656 N.E.2d 643. *Page 7 
 {¶ 20} A trial strategy may include a motion to suppress evidence. However, failure to file a motion to suppress is not per se ineffective assistance of counsel. State v. Madrigal, 87 Ohio St.3d 378, 389,2000-Ohio-448, 721 N.E.2d 52, certiorari denied (2000), 531 U.S. 838,121 S.Ct. 99, 148 L.Ed.2d 58. See also, Kimmelman v. Morrison (1986),477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305. Even when some evidence in the record supports a motion to suppress, counsel is presumed to be effective if the counsel could have reasonably concluded that the filing of a motion to suppress would have been a futile act.State v. Chandler, Cuyahoga App. No. 81817, 2003-Ohio-6037; State v.Edwards (July 11, 1996), Cuyahoga App. No. 69077, citing State v.Martin (1983), 20 Ohio App.3d 172, 485 N.E. 2d 717. See also,Strickland, 466 U.S. at 689. In such a case, where probability of success is slim, appellant fails to establish prejudice. State v.Nields, 93 Ohio St.3d 6, 2001-Ohio-1291, 725 N.E.2d 859. Essentially, counsel's failure to file a motion to suppress only constitutes ineffective assistance if, based on the record, the motion would have been granted. State v. Robinson (1996), 108 Ohio App.3d 428, 433,670 N.E.2d 1077.
 {¶ 21} Appellant argues that his counsel's performance was deficient because counsel failed to file a motion to suppress the revolver which was seized without a warrant from his vehicle. We disagree.
 {¶ 22} Generally, "[f]or a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant." State v. Moore (2000), 90 Ohio St.3d 47, 49,734 N.E.2d 804, citing Katz v. United States (1967), 389 U.S. 347, 357,88 S.Ct. 507, 19 L.Ed.2d 576; State v. Brown (1992), 63 Ohio St.3d 349,350, 588 N.E.2d 113. However, there are several exceptions *Page 8 
to the warrant requirement. A relevant exception in the case sub judice is the "plain view" exception.
 {¶ 23} There are three general requirements that must be met for the "plain view" doctrine. State v. Halczyszak (1986), 25 Ohio St.3d 301,303, 496 N.E.2d 925, citing Coolidge v. New Hampshire (1971),403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. "First, the initial intrusion that brought the police into a position to view the object must have been legitimate. Second, the police must have inadvertently discovered the object. Third, the incriminating nature of the object must have been immediately apparent." Id.
 {¶ 24} In this case, when officers responded to appellant's residence, they observed a man and a motor vehicle that matched the store clerk's description. The officer's approached appellant in order to make a brief detention for identification purposes. At the time of the stop, appellant had opened the passenger side of the motor vehicle. While the law enforcement officers and probation officer were gathered around the motor vehicle, they inadvertently observed a firearm between the driver and passenger seat of the motor vehicle. The firearm was immediately incriminating as it was in the motor vehicle of an individual under a disability for a felony offense and it fit the description of the firearm used in the commission of the aggravated robbery at the Duke and Duchess convenience store. The officers then seized and secured the firearm prior to the impound of the motor vehicle.
 {¶ 25} The actions of the officers fell within the exception of the plain view doctrine. For these reasons, there was little likelihood that a motion to suppress would have been successful. Accordingly, appellant's counsel was not ineffective for failing to file a motion to suppress. *Page 9 
 {¶ 26} Appellant further argues that counsel's performance was deficient for failure to request a continuance of trial to further investigate the following State's witnesses: forensic scientist, Max Ligani, the cigarette distributor, William Yost and the investigator from the prosecutor's office, Erik McCort.
 {¶ 27} The decision to seek a continuance is a matter of trial tactics. State v. Samatar, 152 Ohio App.3d 311, 2003-Ohio-1639,787 N.E.2d 691. In the present case, appellant was incarcerated pending trial. It appears that the three witness names were provided to appellant within a week of the trial date. The State indicated that throughout the discovery process information had been provided to appellant which established that witnesses would be called to testify regarding the authenticity of the telephone recording, the tax id number on the cigarettes and the DNA analysis results. The record further indicates that counsel was adequately prepared and effectively cross-examined each of the three witnesses. There is nothing to indicate that a continuance of the trial would have substantially changed the outcome of the proceedings. Therefore, appellant has presented no evidence that counsel's decision not to seek a continuance was anything more than sound trial strategy.
 {¶ 28} For these reasons appellant's first assignment of error is hereby overruled.
 II {¶ 29} In the second assignment of error, appellant argues that the conviction is against the manifest weight of the evidence. We disagree.
 {¶ 30} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact *Page 10 
"clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. The appellate court must bear in mind that the trier of fact has a superior, first-hand perspective in judging the demeanor and credibility of the witnesses. See State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. Therefore, the power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, at 387, 678 N.E.2d 541.
 {¶ 31} In this case, appellant was convicted of one count of aggravated robbery with a firearm specification and one count of having a weapon under disability.
 {¶ 32} The elements of Aggravated robbery in violation of R.C.2911.01(A)(1) and the firearm specification are in pertinent part as follows:
 {¶ 33} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 34} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *
 {¶ 35} A Firearm specification in violation of R.C.2929.14(D) and 2941.145 requires a finding that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. A violation of this section requires the imposition of a three year *Page 11 
mandatory prison term. In order to enhance the underlying aggravated robbery, the State must present evidence beyond a reasonable doubt that the firearm was operable at the time of the offense. State v.Gaines (1989), 46 Ohio St.3d 65, 545 N.E.2d 68.
 {¶ 36} The elements of having a weapon under disability in violation of R.C. 2923.13(A)(3) are in pertinent part as follows:
 {¶ 37} "(A) Unless relieved from disability as provided in section2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordinance, if any of the following apply: * * *
 {¶ 38} "(3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.
 {¶ 39} Appellant contends that the verdict was against the manifest weight of the evidence on the grounds that the identification evidence was not credible. Specifically appellant argues that the cigarettes were a "red herring", that the photograph of appellant in an unrelated Addidas shirt on the date of his arrest was prejudicial and that the probation officer's identification of appellant from the store video amounted to expert testimony by an unqualified witness.[1] However, we find that there was sufficient evidence for the finder of fact to identify appellant as the perpetrator of the criminal acts.
 {¶ 40} In this case, the store clerk testified that the individual who committed the aggravated robbery was a white male in his twenties wearing a dark Addidas shirt with *Page 12 
white lettering, a blue ball cap and silver rimmed glasses. She stated that the individual used a revolver during the robbery. She also identified the individual's vehicle and provided investigators with a license plate number. She testified that prior to the robbery the individual requested a pack of Kool cigarettes and ordered her to place money in a Kroger's plastic grocery bag. Finally, at trial, she testified that appellant, who was seated in the courtroom, was wearing silver rimmed glasses which were identical to the perpetrator's glasses.
 {¶ 41} The investigating officers traced the license plate number to a van purchased for appellant's use. Officers responded to appellant's residence and observed appellant opening the passenger side door of the van. During subsequent searches of appellant's apartment and vehicle the officers seized a .38 caliber revolver, a Kroger's plastic grocery bag, Kool Filter King cigarettes, a brown Addidas shirt with white lettering and a blue ball cap.
 {¶ 42} The revolver was identified as being the firearm missing from appellant's uncle's gun collection and the revolver used in the offense. The Kroger's bag was similar to the plastic bag given to the clerk during the robbery. The Kool Filter King cigarettes bore a tax identification stamp which could only be found on cigarettes distributed exclusively to Duke and Duchess convenience stores. The forensic analysis included appellant as the DNA donor on the brown Addidas shirt and blue ball cap. During a taped conversation after his arrest, appellant stated that he was in a "bad situation" and "made a desperate move". Finally, as an indicted and/or convicted felon, appellant was under a disability which had not been lifted and was in possession of an operable firearm during the criminal offense and in his vehicle. *Page 13 
 {¶ 43} Accordingly, the record before us demonstrates that there was sufficient evidence to identify appellant as the perpetrator of the offense. For these reasons we find that the jury did not lose its way and that the conviction is not against the manifest weight of the evidence. Appellant's second assignment of error is hereby overruled.
 {¶ 44} The Judgment of the Licking County Court of Common Pleas is hereby affirmed.
 Edwards, J. Farmer, P.J. and Wise, J. concur *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Appellant seems to include arguments pertaining to the admissibility of evidence. We decline to address these issues as appellant has stated that the second assignment asserts a claim that the conviction is against the manifest weight of the evidence. *Page 1